## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PACIFIC LIFE INSURANCE COMPANY, a Nebraska Corporation, | ) ) ) | CASE NO. 8:09CV168 |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| QWEST CORPORATION, a Foreign Corporation; and QWEST BUSINESS RESOURCES, INC., a Foreign Corporation, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on the Motion to Dismiss (Filing No. 8), filed by Defendants Qwest Corporation and Qwest Business Resources, Inc.[1] (collectively "Qwest"), pursuant to Fed. R. Civ. Pro. 12(b)(6). For the reasons set forth below, the Court will grant the Qwest's Motion and dismiss this action, with prejudice.

### FACTUAL BACKGROUND

The Plaintiff, Pacific Life Insurance Company ("Pacific Life"), is a Nebraska corporation, maintaining its principal offices in California. (Filing No. 1 ("Compl.") at ¶ 1.) Qwest is a foreign corporation transacting business in Nebraska. (Compl. at ¶ 2.) On or about November 1, 2004, Pacific Life entered into a sublease agreement ("Lease Agreement") with Qwest whereby Pacific Life agreed to sublease 57,879 square feet from Qwest in a building known as "1200 Landmark Center" located at 1299 Farnam Street in Omaha, Douglas County, Nebraska. (Compl. at ¶ 6.)

---

[1] Effective January 31, 2008, Qwest Business Resources, Inc., merged with and into Qwest Corporation and is no longer a separate legal entity. (Filing No. 9 at 1, n. 1.)

Pursuant to the Lease Agreement, Pacific Life agreed to pay Qwest monthly rent and operating expenses, as defined in the Lease Agreement. (Compl. at ¶ 8.)  The Lease Agreement also provided that Pacific Life was allowed to make certain improvements to the leased premises, and Qwest agreed to pay Pacific Life for a portion of the cost of those improvements. (Compl. at ¶ 9.)  The work letter ("Work Letter"), attached as Exhibit C to the Lease Agreement, set forth the parties' rights and obligations with respect to the tenant improvements originally contemplated by the Lease Agreement (Compl. at ¶¶ 11 and 25; Affidavit of Karen Thomas ("Thomas Aff."), Filing No. 12, at ¶ 2, Exhs. A and C).

The parties further agreed that "time is of the essence of each and every provision of this Lease." (Thomas Aff., Attach. No. 2 at ¶ 30.9).  The Lease Agreement also contained the following waiver provision:

> No Waiver. The waiver by either party of any agreement, condition or provision contained in this Lease will not be deemed to be a waiver of any subsequent breach of the same or any other agreement, condition or provision contained in this Lease, nor will any custom or practice which may develop between the parties in the administration of the terms of this Lease be construed to waive or to lessen the right of either Landlord or Tenant to insist upon the performance by the other in strict accordance with the terms of this Lease.

(Thomas Aff., Attach. No. 2 at ¶ 30.11).

On or about September 25, 2006, Pacific Life and Qwest amended the Lease Agreement by executing a Second Amendment to the Lease Agreement. (Compl. at ¶ 21; Thomas Aff. at ¶ 4, Exh. C).  Pursuant to the Second Amendment, Qwest agreed to allow Pacific Life to make certain additional improvements ("Second Amendment Improvements") to the Leased Premises as outlined in the work letter attached to and incorporated in the Second Amendment as Exhibit C-1 (the "Second Amendment Work

2

Letter"). (Compl. at ¶ 23; Thomas Aff. at ¶ 4, Exh. C, C-1.)  Pursuant to the Second Amendment Work Letter, Qwest agreed to reimburse Pacific Life in the amount of $398,622, less a 2% administration fee ("Second Amendment Improvement Allowance"), for the Second Amendment Improvements, subject to certain exceptions. (Compl. at ¶ 23; Thomas Aff. at ¶ 4, Exh. C, C-1).  Regarding the costs Qwest would be required to defray, the parties agreed that "[Pacific Life] shall submit all invoices to [Qwest] no later than December 10, 2007, [Qwest] shall not be obligated [to] pay any amounts for invoices submitted after December 10, 2007." (Filing No. 1 at ¶ 25; Thomas Aff., Attach. No. 5, Exh. C-1, ¶ 5(a).)

Pacific Life did not submit invoices for the Second Amendment Improvements until January 6, 2009, nearly 13 months after the deadline specified in the Second Amendment Work Letter.  (Filing No. 1 at ¶ 41).  On January 13, 2009, Qwest notified Pacific Life that Qwest would not pay the costs reflected in the invoices submitted on January 6, 2009, because Pacific Life submitted the invoices well beyond the date called for by the Second Amendment Work Letter. (Compl. at ¶ 42).

On April 9, 2009, Pacific Life filed its Complaint against Qwest in the District Court of Douglas County, Nebraska. (Notice of Removal, Filing No. 1).  In its Complaint, Pacific Life asserted four claims against Qwest:  breach of contract, unjust enrichment, breach of implied covenant of good faith and fair dealing, and equitable estoppel.  On May 18, 2009, Qwest removed this case to the United States District Court based on diversity jurisdiction. (Filing No. 1 at 2).

3

On June 22, 2009, Qwest filed the instant Motion to Dismiss (Filing No. 8), pursuant to Fed. R. Civ. Pro. 12(b)(6).  In its Motion, Qwest asserts that Pacific Life has failed to state a claim upon which relief can be granted for all four causes of action.

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  Specifically, the complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim.  *Id*. at 556.

When ruling on a Defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).  The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (citing 550 U.S. at 556 n.3).  The Court, "therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it

4

need not conjure up unpled allegations to save a complaint." *Id.* (internal quotation marks and citations omitted).

While a Court reviewing a 12(b)(6) motion to dismiss ordinarily does not consider matters outside the pleadings, Fed. R. Civ. Pro. 10(c) states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." "Therefore, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint." *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) (internal quotations omitted). In the Complaint, Pacific Life states: "A true and correct copy of the Lease Agreement, including attached exhibits and work letters, is attached hereto as Exhibit A and incorporated herein by this reference." (Compl. at ¶ 6.) While it appears that Pacific Life attached these exhibits to its Complaint filed in the District Court of Douglas County, Nebraska, they are not attached to Qwest's Notice of Removal. (*See* Filing No. 1.) Qwest has since presented the documents to this Court (s*ee* Filing No. 10) and there is no dispute as to the documents themselves. For purposes of Fed. R. Civ. Pro. 10(c), therefore, the Lease Agreement and work letters referenced in Pacific Life's Complaint are embraced by the pleadings and will be considered in construing the sufficiency of Pacific Life's Complaint.

**DISCUSSION**

**1.      First Cause of Action: Breach of Contract**

Under Nebraska law,[2] "in order to recover for breach of contract a plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any

---

[2] The parties do not dispute that Nebraska law applies to the legal interpretation of their contractual agreement. (*See* Filing Nos. 9 and 11.)

conditions precedent that actuate the defendant's duty." *Vowers & Sons v. Strasheim*, 576 N.W.2d 817, 825 (Neb. 1998).   It is clear that Pacific Life did not comply with the "conditio[n] precedent that actuate[s] the defendant's duty." *Id.*  Because Pacific Life did not submit the requisite invoices to Qwest in a timely manner as required by the parties' agreement, Qwest's refusal to make payment for the amounts reflected in the invoices does not constitute a breach of the parties' contract.

The Second Amendment Work Letter's language, regarding the December 2007 deadline,[3] constitutes a condition within the contract, and Pacific Life's noncompliance with this condition absolves Qwest of liability. *See Harmon Cable Commc'n of Neb. Ltd. P'ship v. Scope Cable Television, Inc.*, 468 N.W. 2d 350, 359 (Neb. 1991) (quoting Restatement (Second) of Contracts § 225 at 165 (1981) ("Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.").   Under Nebraska law, "[p]erformance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused." *Id.* (quoting Restatement (Second) of Contracts § 225 at 165 (1981)).  In this case, Pacific Life has not asserted any excuse for its noncompliance with the December 2007 deadline.

In its response to Qwest's Motion to Dismiss, Pacific Life argues that the Second Amendment Work Letter's stipulation that "[Qwest] shall not be obligated [to] pay any amounts for invoices submitted after December 10, 2007," was merely a promise, and not a condition.  This distinction is important.  While "a condition must be exactly fulfilled before

---

[3] "[Pacific Life] shall submit all invoices to [Qwest] no later than December 10, 2007, [Qwest] ***shall not be obligated [to] pay*** any amounts for invoices submitted after December 10, 2007." (Filing No. 1 at ¶ 25; Thomas Aff., Attach. No. 5, ¶ 5(a)) (emphasis added.)

6

liability can arise on the contract[,] . . . [t]he non-fulfillment of a promise is called a breach of contract, and creates in the other party a secondary right to damages." *Harmon Cable*, 468 N.W.2d at 882-83 (internal quotations and citations omitted).  The Court, however, finds that the language of the Second Amendment Work Letter's does not support Pacific Life's position.

"Whether contractual language is deemed conditional or promissory generally depends upon the intention of the parties." *Id.* at 883.  To determine the intent of the parties, the Court first looks to the contractual language in the agreement.  "Terms such as 'if,' 'provided that,' 'when,' 'after,' 'as soon as,' 'subject to,' 'on condition that,' or some similar phrase are evidence that performance of a contractual provision is a condition." *Id.*

The language of the Second Amendment Work Letter is clear.  Specifically, the parties agreed that "[Pacific Life] shall submit all invoices to [Qwest] no later than December 10, 2007, [Qwest] ***shall not be obligated [to] pay*** any amounts for invoices submitted after December 10, 2007." (Filing No. 1 at ¶ 25; Thomas Aff., Attach. No. 5, ¶ 5(a)) (emphasis added).  This language leaves no room for an interpretation that the parties intended for the December 2007 deadline to be optional or merely promissory. Accordingly, the Court finds that the requirement that Pacific Life submit its invoices no later than December 10, 2007, operated as a condition precedent to Qwest's contractual duty to pay amounts reflected in the invoices.  Pacific Life's failure to comply with this condition absolves Qwest of any liability.[4]

---

[4] In its response to Qwest's Motion, Pacific Life asserts that Qwest's earlier payment of an invoice that Pacific Life submitted late effectively waived the condition that Pacific Life submit its subsequent invoices by December 10, 2007.  The explicit language found within the parties' Sublease Agreement dictates otherwise:

### 2.   Second Cause of Action: Unjust Enrichment

The parties' express contractual language concerning Qwest's obligation to pay prevents Pacific Life from proceeding with its claim for unjust enrichment.

Unjust enrichment is an equitable action based on the theory of an implied contract, and consequently, is only proper in instances where the parties do not have an express contract. *See Siebler Heating & Air Conditioning v. Jenson,* 326 N.W.2d 182, 184 (Neb. 1982).[5]  Because the parties have an express contract governing the same subject matter that forms the basis for Pacific Life's unjust enrichment claim, the Court concludes that Pacific Life's claim based on an implied contract must be dismissed.

The Nebraska Supreme Court has held that where rights of parties to money or property are governed by a valid contract, an action for money based on the equitable principle of unjust enrichment will not lie. *Wrede v. Exchange Bank of Gibbon*, 531 N.W.2d 523, 530 (Neb. 1995) (quotations and citation omitted).  That is, under Nebraska, "there cannot be an express and an implied contract for the same thing existing at the same

---

No Waiver. The waiver by either party of any agreement, condition or provision contained in this Lease will not be deemed to be a waiver of any subsequent breach of the same or any other agreement, condition or provision contained in this Lease, nor will any custom or practice which may develop between the parties in the administration of the terms of this Lease be construed to waive or to lessen the right of either Landlord or Tenant to insist upon the performance by the other in strict accordance with the terms of this Lease.

(Thomas Aff., Attach. No. 2 at ¶ 30.11).

[5]  "'It is only when parties do not expressly agree that the law interposes and raises a promise. No agreement can be implied where there is an express one existing. Thus, an express contract precludes the existence of a contract implied by law or a quasi-contract.'" *Siebler Heating & Air Conditioning v. Jenson*, 326 N.W.2d 182, 184 (Neb. 1982) (quoting *Klebe v. United States*, 263 U.S. 188 (1923).

8

time." *Id.* "Certainly, it is true that an implied contract cannot arise where an enforceable contract exists between the parties as to the same subject matter and a conflict would thereby result." *Assoc. Wrecking and Salvage Co. v. Wiekhorst Bros. Excavating & Equip. Co.*, 424 N.W.2d 343, 348 (Neb. 1988).

In the present case, there is an express, valid contract governing the same subject matter that Pacific Life now asserts as the basis for its unjust enrichment claim.  While the law will recognize "an implied contract on a point not covered by an express contract," those circumstances are not present in the parties' Second Amendment Work Letter.  In this case, the parties' agreement leaves no question as to what the legal liability would be for each party in the event that Pacific Life were to submit its invoices after December 10, 2007.  The parties' express agreement stipulates that "[Qwest] shall not be obligated [to] pay any amounts for invoices submitted after December 10, 2007." (Compl. at ¶ 25; Thomas Aff., Attach. No. 5.) (emphasis added).  To allow Pacific Life to proceed with its claim for unjust enrichment would render this express contractual language null and void.

### 3.    Third Cause of Action: Breach of Implied Covenant of Good Faith and Fair Dealing

"[T]he nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties. Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party." *Spanish Oaks, Inc. v. Hy-Vee, Inc.*, 655 N.W.2d 390, 400 (Neb. 2003).  Qwest's refusal to pay the invoices, however, was neither arbitrary, capricious, or unreasonable.  Under Nebraska law, "[a]cting according to express terms of

9

a contract is not a breach of good faith and fair dealing." *Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 983 (8th Cir. 1991).

In the present case, Qwest was never under a contractual duty to pay the invoices because Pacific Life failed to satisfy the contractual condition necessary to activate Qwest's duty to pay. Because the pleadings demonstrate that Qwest acted in accordance with the express terms of the contract, the Court will dismiss Pacific Life's claim for breach of the implied covenant of good faith and fair dealing.

### 4.    Fourth Cause of Action: Equitable Estoppel

To establish a claim for equitable estoppel under Nebraska law, a plaintiff must plead the following elements:

> (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts.

*Berrington Corp. v. State Dept. of Revenue*, 765 N.W.2d 448, 455 (Neb. 2009). Pacific Life has not pled the necessary elements. The Complaint merely asserts that Qwest "promised to pay Pacific Life for a portion of the cost of all approved Tenant Improvements made to the Leased Premises." (Filing No. 1 at ¶ 81). Pacific Life asserts that it then relied upon this promise and expended great amounts of money to make improvements, expecting partial reimbursement. (Filing No. 1 at ¶¶ 83-84).

Nowhere in the Complaint does Pacific Life allege any facts to support the conclusion that Qwest made any "false representation or concealment of material facts," or that Qwest's conduct was "calculated to convey the impression that the facts are

10

otherwise than, and inconsistent with, those which the party subsequently attempts to assert." *Berrington*, 765 N.W.2d at 455.  The Complaint also fails to assert that any of Qwest's conduct was committed with the intention, or the expectation, of influencing Pacific Life to make the improvements.

In its response brief, Pacific Life asserts that although not explicitly stated in the Complaint, it is alleging that Qwest gave a false impression that it would excuse Pacific Life's subsequent failure to comply with the strict terms of the contract because Qwest had previously ignored Pacific Life's failure to submit its invoices in compliance with the contract's strict deadlines.   This argument is unpersuasive, in light of the Lease Agreement's waiver provision:

> [t]he waiver by either party of any agreement, condition or provision contained in this Lease will not be deemed to be a waiver of any subsequent breach of the same or any other agreement, condition or provision contained in this Lease, nor will any custom or practice which may develop between the parties in the administration of the terms of this Lease be construed to waive or to lessen the right of either Landlord or Tenant to insist upon the performance by the other in strict accordance with the terms of this Lease.

(Thomas Aff., Attach. No. 2 at ¶ 30.11).  Given this waiver provision, Pacific Life was on notice that a party's one-time waiver of a condition within the contract would not ensure future waivers.

Pacific Life has not pled facts to establish misrepresentation or intentional deception on the part of Qwest, and has not presented a claim for equitable estoppel on which relief can be granted.

## CONCLUSION

The Court will grant Qwest's Motion to Dismiss and will dismiss Pacific Life's Complaint, with prejudice.

IT IS ORDERED:

1.      The Motion to Dismiss (Filing No. 8) submitted by Defendants Qwest

        Corporation and Qwest Business Resources, Inc., is granted;

2.      The Plaintiff Pacific Life Insurance Company's Complaint (Filing No. 1) is

        dismissed, with prejudice; and

3.      The Court will file a separate Judgment in accordance with this

        Memorandum and Order.

DATED this 29th day of July, 2009.

                                        BY THE COURT:


                                        s/Laurie Smith Camp
                                        United States District Judge